UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| WILLIAM HAMILTON, | No. C 11-00888 LB |
| Plaintiff, | **ORDER** |
| v. | [ECF Nos. 75, 76, & 77] |
| RADIOSHACK CORPORATION, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

The parties again ask for court intervention to solve their discovery disputes. *See, e.g.*, prior disputes at ECF Nos. 27, 29, 30, 33, 36, 39, 41, 42, 45, 47, 51, 53, 54, 56, 59, 60, 61, 69, and 70.[1] Their latest disputes involve whether Hamilton has sufficiently responded to RadioShack's Interrogatories Nos. 9-11, Requests for Production Nos. 16, 24-43, 47-63, and 65, and Special Interrogatories Nos. 4, 15-21, and 24-25, and the proper length and scope of an upcoming deposition. Sensibly, the parties have facilitated the court's consideration by sorting their discovery disputes into groups. The court will address each group of disputed discovery requests in turn.

The crux of the parties' dispute is whether the attorney work product doctrine relieves Hamilton of his obligation to answer RadioShack's requests. The work product doctrine is incorporated into Federal Rule of Civil Procedure 26(b)(3)(A), which states: "Ordinarily, a party may not discover

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top, not the pages on the bottom.

C 11-00888 LB
ORDER

1  documents and tangible things that are prepared in anticipation of litigation or for trial by of for
2  another party or its representative (including the other party's attorney, consultant, surety,
3  indemnitor, insurer, or agent)." *See In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004)
4  (*quoting Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). The plain
5  language of Rule 26 limits the scope of the attorney work product doctrine to documents and
6  tangible things, not the underlying facts.

## II. THE JUNE 12, 2012 JOINT LETTER BRIEF

### A. Counsel's Communications with RadioShack Affiliated Persons (RadioShack's Special Interrogatory No. 4)

RadioShack seeks to compel Hamilton to respond to its Special Interrogatory No. 4. Depending upon the party's characterization, RadioShack's Special Interrogatory No. 4 ("Rog 4") seeks either "the identification of anyone affiliated with RadioShack whom Plaintiff or his agents have contacted," ECF No. 75 at 2, or the "names of all persons affiliated with RadioShack with whom he or his counsel has 'communicated with concerning the allegations in the complaint,'" *Id.* at 3 (impliedly quoting Rog 4). Neither party, however, has attached Rog 4 to their joint letter brief or even quoted it in full. Nevertheless, the court will address the parties' arguments to the extent it is able. Based on the information provided by the parties, the court DENIES RadioShack's request.

Hamilton argues that it need not respond to Rog 4 because "[s]eeking the identity of witnesses who have been interviewed by counsel, or at the direction of counsel, is an impermissible violation of the attorney work product doctrine." *Id.* (citing William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 11:877 (The Rutter Group 2012) ("Rutter Guide")). RadioShack responds that "[t]he identities of persons upon whom Plaintiff chooses to base his litigation are not protected by the work product doctrine." ECF No. 75 at 2 (citing *In re Connetics Corp. Securities Litig.*, No. C 07-02940 SI, 2009 WL 1126508 (N.D. Cal. Apr. 27, 2009)).

In *Connetics*, the plaintiff's complaint was based on information provided by confidential witnesses. *In re Connetics*, 2009 WL 1126508 at *1. Thus, that court addressed only the narrow question of whether the disclosure of the identity of a confidential witness at an early stage of

1 litigation was protected by the work product doctrine. *Id.* Notably, disclosure of the confidential
2 witnesses was inevitable and, under the facts of that case, early disclosure would not compromise
3 the plaintiffs' strategic or tactical positions. *Id.* In this case, RadioShack seeks a much broader
4 disclosure. Instead of seeking just the identities of witnesses who gave statements for the complaint,
5 RadioShack seeks the identities of all RadioShack-affiliated people with whom Hamilton or his
6 counsel actually communicated about the allegations in the complaint. "[S]eeking the identity of
7 witnesses who have been interviewed by opposing counsel . . . .would involve protected work
8 product." The Rutter Guide § 11:877. Accordingly, RadioShack's request to compel Hamilton to
9 respond to Special Interrogatory No. 4 is DENIED.

10 **B. Complaints Against Aybef (RadioShack's Interrogatories Nos. 9-11 and RFP 16)**

11 RadioShack's Interrogatories Nos. 9-11 and Request for Production No. 16 seek to discover
12 information about complaints made against Basem Aybef, a RadioShack employee at the center of
13 this case. *See* ECF No. 75-1 at 2-3, 6. Counsel for RadioShack learned from Hamilton's counsel
14 that "Plaintiff has information about complaints made against Mr. Aybef that are not reflected in
15 Defendant's documents." ECF No. 75 at 1. RadioShack served discovery requests to learn this
16 information. In relevant part, Defendant's Interrogatory No. 9 states:

> IDENTIFY every person YOU contend made a complaint about Basem Aybef from 2001 to the present. [For the purpose of this interrogatory, the term "IDENTIFY" means to state the name of and any contact information available to YOU for each individual. The term "YOU means Plaintiff WILLIAM HAMILTON and includes all present or past agents, consultants, attorneys, and others acting on behalf of Plaintiff.]

21 *Id.* at 2. Interrogatories 10 and 11 seek the facts regarding the complaints identified and the
22 identities of the person(s) to whom each request was made. *Id.* at 3. Request for Production 16
23 seeks documents associated with Interrogatories 9-11. *Id.* at 6. Hamilton objects to the discovery
24 requests on the grounds that they call for information protected by the attorney-client privilege
25 and/or work product doctrines. ECF No. 75-1 at 3, 6-7.
26 First, Hamilton's attorney-client privilege objection is unfounded. According to RadioShack,
27 Hamilton concedes that his attorney-client privilege objections are without merit. ECF No. 75 at 1.
28 While Hamilton does not address his attorney-client privilege objection in his section of the letter

brief, the court agrees with RadioShack that the attorney-client privilege does not apply because the attorney-client privilege only attaches to communications between attorney and client.

Second, Hamilton argues that "plaintiff has already identified all persons who have complained about Aybef" and that RadioShack "has the names and known contact information of the individuals who have complained . . . ." *Id.* at 4. The court construes Hamilton's argument as an admission that the work product doctrine protects neither the complainants' identities nor their contact information, a conclusion that the court reaches anyway. Furthermore, RadioShack contends that it cannot identify at least six of the individual named on Hamilton's updated Initial Disclosures. *Id.* at 3. Accordingly, the court ORDERS Hamilton to provide the information requested in RadioShack's Interrogatory 9.

The court also ORDERS Hamilton to provide the information requested in RadioShack's Interrogatories Nos. 10 and 11. The Federal Rules of Civil Procedure clearly limit the work product protection doctrine to "documents and tangible things," not to the underlying facts. Nor do the facts "regarding the alleged complaint" reveal anything about counsel's litigation strategy other than the undisputed fact that they contacted complainants to learn more about Mr. Aybef and RadioShack.

With regard to RadioShack's Request for Production No. 16, the situation is different. That request seeks "All DOCUMENTS evidencing, reflecting, referring to or related to all complaints identified by YOUR response to Defendant's Special Interrogatories, Set Two." ECF No. 75-1 at 6. Hamilton objects to this document request on the grounds of the attorney-client and attorney work product privileges, and to the extent that the request seeks documents that RadioShack previously produced in this litigation. *Id.* In his letter brief, Hamilton states that "the only documents plaintiff has, other than those produced by defendant in discovery, are counsel's notes regarding conversations with various employees and ex-employees." ECF No. 75 at 5. The court finds that such notes are work product protected and need not be produced absent a showing of substantial need. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Because the court separately orders Hamilton to respond to RadioShack's interrogatories with the facts contained in those notes, RadioShack cannot demonstrate any need for Hamilton's notes. Accordingly, the court DENIES RadioShack's request to compel Hamilton to answer its Request for Production No. 16.

1  While the court is satisfied that Hamilton's counsel would know of any additional documents,
2  RadioShack has the right to demand formal answers to its Request for Production that would include
3  the customary assurances that the plaintiff has conducted a diligent search for the requested
4  documents. The court will address this concern below.

### III. THE JUNE 13, 2012 JOINT LETTER BRIEF

**A. <u>Verified Responses</u>**

RadioShack complains that Hamilton has not verified his responses to numerous discovery requests. ECF No. 76 at 1; ECF No. 76-3 at 2. Hamilton counters that this issue has already been resolved and accuses RadioShack of refusing to update its portion of the joint discovery letter to account for this change. ECF No. 76 at 3. If Hamilton has not verified all of the discovery responses identified in Exhibit 3 to the June 13, 2012 joint letter brief, he is ORDERED to do so within 7 days of this Order. In addition, if the parties file additional joint letter briefs, they are hereby ORDERED to raise only live disputes.

**B. <u>Special Interrogatories</u>**

RadioShack seeks to compel Hamilton to respond to its Special Interrogatories 15-21, 24, and 25. RadioShack argues that these are contention interrogatories that seek factual information about Hamilton's contentions and the identities of persons with knowledge of facts related to Hamilton's claims. *Id.* at 1. RadioShack claims that contention interrogatories are proper under established precedent. *Id.* (*citing U.S. ex rel. O'Connell*, 245 F.R.D. 646 (C.D. Cal. 2007); *Tennison v. City and County of San Francisco*, 226 F.R.D. 646 (C.D. Cal. 2005). Hamilton responds to RadioShack's arguments in the context of specific discovery requests.

**1. Special Interrogatory No. 15.**

First, the parties dispute whether Hamilton must respond to Special Interrogatory No. 15, which asks Hamilton to "[s]tate all facts which support your contention that RadioShack violated Government Code section 12940(k), as alleged in the Third Cause of Action in your complaint." ECF No. 76-1 at 3. Hamilton objects to this response as (a) overly broad and unduly burdensome, (b) calling for information protected by the attorney work product doctrine, and (c) prematurely calling for expert discovery. *Id.* at 3-4.

Hamilton supports its overly broad and unduly burdensome objection by generally disputing the propriety of contention interrogatories. ECF No. 76 at 3 (*citing IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 272, 280-81 (D. Kan. 1998)). "Contention interrogatories asking for 'each and *every* fact,' or application of law to fact, that supports particular allegations in an opposing pleading may be held overly broad and unduly burdensome." Rutter Guide, § 11:1682 (citing *IBP, Inc.*, 179 F.R.D. at 321).

Just because contention interrogatories *may* be overly broad and unduly burdensome, however, does not mean that they *must* be. In *IBP, Inc.*, the case cited by Hamilton, the District of Kansas found the contention interrogatories to be unduly burdensome, but courts in this district have found the decisions in *IBP, Inc.*, and similar cases to be highly fact-specific and of little help in any particular instance. *See, e.g., S.E.C. v. Berry*, No. C07-04431 RMW (HRL), 2011 WL 2441706, at *4 n.4 (distinguishing *IBP, Inc.*). At this stage of the litigation and in the context of the facts of this case, the court finds that RadioShack's Special Interrogatory No. 15 is neither overly broad nor unduly burdensome.

Nor is the court persuaded by Hamilton's attorney work product doctrine objection. As discussed above, the work product doctrine does not protect the facts of a particular claim, as the cases cited by both parties either explicitly or implicitly indicate. *See also* Rutter Guide, § 11:1676 (giving as an example of an unobjectionable contention interrogatory: "State the facts upon which you base the allegations in Paragraph 27 of the complaint."). Accordingly, the court ORDERS Hamilton to respond to RadioShack's Special Interrogatory No. 15. Finally, in the context of this case, the court finds persuasive the reasoning in *S.E.C. v. Berry* regarding the level of detail required in responding to such contention interrogatories. *See* 2011 WL 2441706, at *3-4. The court suggests that the parties consider this reasoning in drafting their response to this interrogatory and deciding whether to dispute the sufficiency of that response.

**2. Special Interrogatories Nos. 16-21, 24, and 25**

RadioShack's Special Interrogatories No. 16-21, 24, and 25 call for the names of every employee who allegedly suffered harassment, retaliation, or discrimination by RadioShack employees Aybef

1  or Ocampo.[2] ECF No. 76-1 at 4-7. Hamilton objects to these interrogatories on the grounds of the
2  work product protection doctrine, and as ambiguous as to the terms "harassed," "retaliated," and
3  "discriminated." *Id.* As discussed, the work product protection doctrine does not protect the facts
4  requested in these interrogatories so these objections are overruled. Hamilton's ambiguity
5  objections are "based on the fact that throughout the litigation defendant has taken the position that
6  complaints made about Aybef harassing or retaliating against employees were not relevant because
7  of the inherent ambiguity of those terms." ECF No. 76 at 4. Hamilton's "tit for tat" objections are
8  not well placed. Accordingly, the court ORDERS Hamilton to respond to Special Interrogatories
9  Nos. 16-21.

**C. Document Requests**

RadioShack argues that Hamilton has deficiently responded to Requests for Production Nos. 24-43, 47-63, and 65. Requests for Production Nos. 24-43, 47, 50, 53, and 56 seek "[a]ll DOCUMENTS related to YOUR COMMUNICATIONS" with and "[a]ll DOCUMENTS YOU sent to or received from" specified third parties that Hamilton named in his Initial Disclosures. ECF No. 76-2 at 5-16. Hamilton objected to these requests to the extent responses would violate the attorney-client privilege or attorney work product doctrine. *See, e.g., id.* at 5. Subject to these objections, Hamilton agreed to produce all documents in his possession, custody, or control that had not already been produced, and "that are related to this case." *See, e.g., id.* RadioShack does not object to Hamilton's production only of documents "that are related to this case," and the court finds that limitation appropriate. RadioShack argues, instead, that Hamilton's responses are deficient because he has not produced any responsive documents, has not stated he has no responsive documents, and has not produced a privilege log. ECF No. 76 at 2. The court will address RadioShack's arguments below.

RadioShack similarly moves to compel responses to Document Requests Nos. 48-49, 51-52, 54-55, and 57, which seek documents reflecting Hamilton's communications with third parties, some of

---

[2] The court observes that neither party has substantively addressed Hamilton's responses to Special Interrogatories Nos. 24 and 25. Accordingly, the court will not rule on the sufficiency of these responses, but will advise the parties to consider how the court has ruled on similar discovery disputes and act accordingly.

whom were identified in Hamilton's Initial Disclosures as having knowledge of Hamilton's emotional distress. ECF No. 76 at 2. Hamilton objects to these requests for production on the grounds that the documents requested are protected by the attorney-client privilege and/or the attorney work product doctrine, that the requests are overly broad and not reasonably calculated to lead to the discovery of admissible evidence, and that they are subject to Hamilton's right to privacy and the privacy rights of third parties. *See, e.g.,* ECF No. 76-2 at 13-14.

Next RadioShack requests an Order compelling Hamilton to specify that he either has produced or does not have in his possession, custody, or control, documents responsive to Requests for Production Nos. 58 and 59, and that any documents withheld on the basis of attorney-client privilege, work product protection, or privacy, should be listed on a privilege log. ECF No. 76 at 2. Requests for Production Nos. 58 and 59 seek documents that support Hamilton's contentions that RadioShack failed to prevent discrimination and retaliation. ECF No. 76-2 at 17. RadioShack again objects to these requests to the extent they call for documents protected by the attorney-client privilege and attorney work product doctrine. *Id.* Hamilton also objects to the request as duplicative, as prematurely seeking expert disclosures, and to the extent that it seeks documents that RadioShack previously produced.

Finally, RadioShack seeks to compel responses to Requests for Production Nos. 60-63 and 65. These requests seek documents Hamilton sent to or received from current and former RadioShack employees as well as documents reflecting such communications. ECF No. 76-2 at 17-18. Hamilton objects to the extent that these requests seek documents protected by the attorney-client privilege and/or work product protection doctrines, violate Hamilton's or third-parties' rights to privacy, and as overly broad and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* In subsequent correspondence RadioShack "offered to limit these requests to documents that relate in any way to Plaintiff's termination and/or the claims asserted in this lawsuit." ECF No. 76 at 2. Subject to RadioShack's limitation, the court OVERRULES Hamilton's objections that these requests are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

With regard to all of the Requests for Production discussed in the previous paragraphs, the court

1 ORDERS Hamilton's counsel to reevaluate all documents withheld on the basis of the attorney work
2 product protection doctrine to ensure that it is only withholding documents reflecting counsel's or
3 their agents' mental processes and legal opinions.

4 In response to RadioShack's objections, Hamilton catalogs his own list of grievances regarding
5 RadioShack's deficient discovery responses and improper objections and asks that the court impose
6 on RadioShack the same "assignment" that RadioShack requests of it. *Id.* The court will grant
7 Hamilton's request.

8 Accordingly, the court ORDERS both parties to supplement their responses to each and every
9 Request for Production in this matter. Such supplemental responses are to be verified, under penalty
10 of perjury, by the parties and all counsel of record for that party. As to each request, the
11 supplemental response shall state that notwithstanding prior general and specific objections
12 interpreted in compliance with this court's Orders, and after diligent search, either: (i) all responsive
13 documents or things in the possession, custody, or control of the responding party have been
14 produced; (ii) no responsive documents or things are in the possession, custody, or control of the
15 responding party; or (iii) more than zero but fewer than all responsive documents or things in the
16 possession, custody, or control of the responding party have been produced, though responsive
17 documents in the possession, custody, or control of the responding party that have not been
18 produced have been logged on a privilege log that complies with the court's Standing Order and this
19 Order.

20 The court further ORDERS both parties to comply with paragraph 7 of this court's Standing
21 Order, which requires litigants to produce a privilege log no later than fourteen days after its
22 disclosures or discovery responses are due, unless the parties stipulate to another date. The parties
23 have 21 days from the date of this Order to produce complete privilege logs documenting every
24 responsive, relevant document they have withheld. If the court has not otherwise specified a
25 deadline for compliance, the parties are ORDERED to complete all obligations imposed by this
26 Order within 7 days of its issuance.

27 \\\
28 \\\

### III. THE JUNE 18, 2012 JOINT LETTER BRIEF

On June 18, 2012, the parties again requested court intervention to resolve a dispute about the length and scope of Hamilton's deposition of Greg Pattakos, scheduled for June 22, 2012. On May 2, 2012, RadioShack served Supplemental Initial Disclosures naming Pattakos as a potential witness with "information related to Donna Ocampo's promotion." June 18, 2012 Joint Letter Brief, ECF No. 77 at 1. That day, Hamilton's counsel e-mailed counsel for RadioShack in order to determine whether it wanted to depose Mr. Pattakos. *Id.* Eventually, RadioShack agreed to produce Mr. Pattakos for deposition on June 22, 2012 in Dallas, Texas. The parties now dispute whether Mr. Pattackos's deposition should be limited to three hours instead of the seven hours permitted under Federal Rule of Civil Procedure 30(d)(2), and whether the scope of the deposition should be limited to questions "concerning the promotion of Donna Ocampo." ECF No. 77 at 3. Hamilton argues in favor of a longer deposition with broader scope and RadioShack seeks to shorten the duration and limit the topics explored.

Under Federal Rule of Civil Procedure 26(c), where a party shows good cause, the court may issue a protective order limiting or broadening the duration and scope of a deposition. Here, RadioShack argues that Hamilton should be able to depose Mr. Pattakos only on his knowledge of Ms. Ocampo's promotion, the topic about which RadioShack's Supplemental Initial Disclosures identified Mr. Pattakos as having information. *Id.* at 3. RadioShack argues that all other topics are either irrelevant or raised too late in the litigation. *Id.* at 3-4. The court does not find that RadioShack's objections constitute good cause. Relevance under the federal rules is broadly defined. *See* Fed. R. Civ. P. 26(b). Nor does RadioShack's complaint about Hamilton's late attempt to schedule the Pattakos deposition demonstrate good cause in this case. In this litigation, and in scheduling this deposition, both parties have unfairly dragged their feet in complying with opposing counsel's discovery requests. *See, e.g.* ECF No. 77 *passim*. Here, Hamilton makes a plausible argument that RadioShack unreasonably delayed scheduling this deposition, which Hamilton began trying to schedule well before the close of discovery. *Id.* at 1-2. Accordingly, the court will not limit the scope of Mr. Pattakos's deposition.

RadioShack also seeks to limit Pattakos's deposition to three hours because he is a busy

executive. ECF No. 77 at 5. The court finds that RadioShack's statement does not make the case for good cause. Accordingly, the court declines to issue a protective order limiting the scope or duration of the Pattakos deposition.

This disposes of ECF Nos. 75, 76, & 77.

**IT IS SO ORDERED.**

Dated: June 18, 2012

LAUREL BEELER
United States Magistrate Judge

C 11-00888 LB
ORDER

11